## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on July 9, 2018**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) **CRIMINAL NO.** |
| | ) **Grand Jury Original** |
| **v.** | ) |
| | ) **VIOLATIONS:** |
| **DAVOUD JAFARI,** | ) |
| **(Counts 1, 3-9)** | ) **Count 1: 18 U.S.C. § 371** |
| | ) **(Conspiracy)** |
| **ANTHONY MERRITT, and** | ) |
| **(Counts 1-9)** | ) **Count 2: 18 U.S.C. §§ 201(b)(2)(A) & (C), 2** |
| | ) **(Bribery)** |
| **VINCENT SLATER** | ) |
| **(Counts 1-2, 4-9)** | ) **Count 3: 18 U.S.C. §§ 201(b)(1)(A) & (C), 2** |
| | ) **(Bribery)** |
| **Defendants.** | ) |
| | ) **Counts 4-6:  18 U.S.C. §§ 1343, 1346** |
| | ) **(Honest Services Wire Fraud)** |
| | ) |
| | ) **18 U.S.C. § 981(a)(1)(C), 28 U.S.C.** |
| | ) **§ 2461(c), and 21 U.S.C. § 853(p)** |
| | ) **(Criminal Forfeiture)** |

## INDICTMENT

The Grand Jury charges that:

At all times material to this indictment:

### Introduction

*Office of Tax and Revenue Structure*

1.     The Office of Tax and Revenue (OTR) was an agency of the government of the District of Columbia responsible for the administration of local taxes for individuals and businesses. OTR's Compliance Administration hosted several divisions and units, including the Collection Division, the Audit Division, and, within the Criminal Investigations Division, the Adjustment Unit.

2.      The mission of the Collection Division was to promptly collect the proper amount of tax from all individuals and businesses as required by the District of Columbia. This mission included identifying non-filers—individuals and businesses who had a requirement to file and had failed to do so.

3.      The mission of the Audit Division was to obtain, maintain, and achieve tax compliance with all District of Columbia tax laws, except real property taxes, through the examination of filed tax returns, identification of non-filers, and unreported tax revenue.

4.      The mission of the Criminal Investigations Division was to investigate potential criminal violations of District of Columbia tax laws. In 2011, in order to limit opportunities for corrupt employees to collude with taxpayers to engage in fraud, OTR established an Adjustment Unit within the Criminal Investigations Division. The creation of the Adjustment Unit ended the ability of employees in other Compliance Administration divisions to make adjustments (for instance, transfers of credits; abatements or waivers of penalties, fees, or interests; offsets; or correction of data entry errors) to taxpayer accounts. Instead, Collection and Audit Division employees were required to support their requests for adjustments with documentation and supervisory approval, and then to submit these materials to Adjustment Unit employees for consideration and further action. Adjustment Unit employees were selected because they were proficient in the processes of the Compliance Administration.

*Business Tax Obligations*

5.      Businesses operating in the District of Columbia were required to pay a variety of business-related taxes and fees, including but not limited to sales and use taxes and franchise taxes. Food and beverages sold for immediate consumption, including meals and liquor sold on the premises, were subject to a ten percent sales and use tax, which the business collected at the time

2

of purchase and was required to remit to the D.C. government. The frequency with which a business was required to file and pay sales and use taxes to the D.C. government was based on its revenue.

6.      A business that did not pay its taxes on time was subject to penalties and interest.

*OTR's Management of Delinquent Taxpayer Accounts*

7.      At the beginning of the acts described below, OTR used a computer database called the Integrated Tax System (ITS) to manage taxpayer accounts. In or about October 2016, OTR migrated corporate franchise tax accounts from ITS to a new computer system called the Modified Integrated Tax System (MITS). On or about October 27, 2017, OTR migrated sales and use tax accounts to MITS. Any OTR employee using ITS or MITS received a unique log-in, and any adjustments made by that employee were associated with the employee's log-in and tracked.

8.      In ITS, if a taxpayer filed a return and did not pay the amount due, the system automatically generated a deficiency notice and mailed it to the taxpayer. If the taxpayer still did not pay the balance after this first notice, a second bill was sent by the system. If the second bill remained unpaid, OTR's Collection Division was notified of the deficient tax period. A revenue officer was then assigned the case for the specific delinquent tax period and would make contact with the taxpayer to request payment and then take collection steps such as liens, levies, and garnishments. In ITS, if a taxpayer filed a return and did not pay the amount due, the system automatically generated a deficiency notice and mailed it to the taxpayer. If the taxpayer still did not pay the balance after this first notice, a second bill was sent by the system. If the second bill remained unpaid, OTR's Collection Division was notified of the deficient tax period. A revenue officer might then have been assigned to the case for the specific delinquent tax period and made contact with the taxpayer to request payment and take collection steps such as liens, levies, and garnishments.

3

*Relevant Individuals*

9.     Defendant VINCENT SLATER was a senior revenue officer at OTR and the supervisor of the Adjustment Unit. As a public official, SLATER owed a fiduciary duty to the District of Columbia, OTR, and District citizens to perform the duties and responsibilities of his office in the best interest of OTR and the citizens of the District.

10.     Defendant ANTHONY MERRITT was a former employee of the District of Columbia Department of Consumer and Regulatory Affairs (DCRA), the District agency responsible for, among other things, business permits and alcohol licenses. Upon separation from DCRA in or about 2012, MERRITT held himself out as a consultant and "expediter" who, for a fee, could assist businesses in obtaining business permits and licenses quickly.

11.     Defendant DAVOUD JAFARI was an owner of Gevani, Inc., which operated a bar, dance club, and restaurant in the District of Columbia under several trade names, including Zebra Bar, Zeba Bar & Grill, Zeba Bar (hereinafter collectively referred to as "Zeba Bar"), from in or about July 2011 to present. Gevani, Inc. was required to pay sales and use taxes on a monthly basis, including ten percent of Zeba Bar's gross receipts from the sale of food and beverages, which taxes were collected by the business at the point of purchase on behalf of the District of Columbia.

4

## COUNT ONE
### (Conspiracy—18 U.S.C. § 371)

12.     The allegations set for in paragraphs 1 through 11 are re-alleged and incorporated by reference as though fully set forth herein.

### The Conspiracy

13.     From in or about October 2012 through in or about December 2017, in the District of Columbia and elsewhere, the defendants,

### DAVOUD JAFARI
### ANTHONY MERRITT, and
### VINCENT SLATER,

with others known and unknown, did knowingly and unlawfully conspire, confederate, and agree together and with each other to commit one or more of the following offenses against the United States:

a.    to directly and indirectly, corruptly give, offer, and promise anything of value to SLATER, a public official, to influence an official act and to induce such public official to do and omit to do any act in violation of his lawful and official duty, in violation of Title 18, United States Code, Section 201(a)(2); and

b.    for SLATER, being a public official, to directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept anything of value personally and for any other person and entity, in return for being influenced in the performance of an official act and to be induced to do and omit to do any act in violation of his lawful and official duty, in violation of Title 18, United States Code, Section 201(b)(2); and

c.    to devise and intend to devise and execute a scheme and artifice to defraud the District of Columbia of money and property, and to defraud and deprive the District of Columbia,

OTR, and District citizens of the honest services of SLATER, a public official, through bribery, in violation of Title 18, United States Code, Sections 1343 and 1346.

### Purpose of the Conspiracy

14.     It was a purpose of the conspiracy for JAFARI, MERRITT, and SLATER to enrich themselves by paying money to SLATER, through MERRITT, in exchange for SLATER's assistance to JAFARI in evading Gevani, Inc.'s District of Columbia tax obligations and creating fraudulent tax credits for Gevani, Inc.

15.     It was further a purpose of the conspiracy for SLATER to enrich himself by soliciting and accepting money from JAFARI, through MERRITT, in exchange for helping JAFARI evade Gevani, Inc.'s District of Columbia tax obligations, and for creating fraudulent tax credits for Gevani, Inc.

### Manner and Means

16.     The conspiracy was carried out through the following manner and means, among others:

a.     SLATER used a middleman, MERRITT, to broker bribe agreements, collect bribe payments, and communicate with JAFARI.

b.     JAFARI paid bribes to SLATER, through MERRITT, so that SLATER would use his official position at OTR to corruptly assist Gevani, Inc.

c.     To evade Gevani, Inc.'s taxes, JAFARI, MERRITT, and SLATER took the following steps on a monthly basis:

i.     JAFARI directed his accountant to prepare Gevani, Inc.'s monthly sales and use tax return;

6

ii. When Gevani, Inc's tax return was ready, JAFARI notified MERRITT and they agreed to meet, often at a bank;

iii. JAFARI signed and gave MERRITT a check from Gevani, Inc., made payable to MERRITT, in an amount equal to approximately half of what the accountant determined Gevani, Inc. owed in sales and use taxes. JAFARI wrote false purposes in the memo lines of these checks, such as "Consolting" and "Promoder," to conceal that the payments were intended to influence SLATER to create false records showing Gevani, Inc.'s monthly tax due as being fulfilled;

iv. JAFARI also provided MERRITT with the sales and use tax return prepared by Gevani, Inc.'s accountant;

v. After cashing JAFARI's check, MERRITT shared the cash with SLATER and gave him the sales and use tax return prepared by Gevani, Inc.'s accountant; and

vi. SLATER provided JAFARI, through MERRITT, documents fraudulently representing that JAFARI had filed and paid Gevani, Inc.'s monthly sales and use taxes. These documents included (1) a copy of the monthly sales and use tax return prepared by Gevani, Inc.'s accountant, initialed by SLATER and stamped or dated as if properly received by OTR, and (2) a District of Columbia payment posting voucher (a document that is supposed to be used only within OTR to indicate the debts to which a payment should be applied and which should not be provided to taxpayers), initialed by SLATER, that falsely indicated that the payment associated with the monthly return had been timely received by the District government.

7

d. As opportunities arose, SLATER used his official position at OTR and knowledge of District of Columbia tax laws, ITS, and OTR processes and procedures, and violated his lawful and official duty to enforce District tax laws, to assist Gevani, Inc. in evading payment of its taxes, including by:

> i. Intervening when other OTR employees sought to make collection efforts against Gevani, Inc.; and
>
> ii. Causing the creation of fraudulent tax credits that could be applied against Gevani, Inc.'s tax liabilities.

## Overt Acts

17. In furtherance of the conspiracy, and to effect its objects and purposes, JAFARI, MERRITT, SLATER, and others committed the following overt acts, among others, in the District of Columbia, and elsewhere:

### *June 2015*

18. In or about early June 2015, JAFARI provided a May sales report for Gevani, Inc. to his accountant, and then obtained from his accountant a sales and use tax return for Gevani, Inc.'s May 2015 tax period, calculating the amount of sales and use taxes due based on the sales report as $6,397.52.

19. On or about June 8, 2015, MERRITT texted JAFARI and asked him what time he wanted to "hook up?" JAFARI suggested noon "at the bank." MERRITT later replied, "I will be there at 12:30. In traffic. I told V we will be there at 12:45 cool?"

20. At approximately 12:38 p.m. on the same day, MERRITT cashed a check in the amount of $3,195 from Gevani, Inc., signed by JAFARI, with the memo line, "Pormoder."

21.     At approximately 12:45 p.m., SLATER scanned two documents to his work e-mail account using OTR's computer system: (1) a copy of the sales and use tax return that JAFARI's accountant had prepared, indicating that Gevani, Inc. owed $6,397.52 in sales and use taxes for the May 2015 tax period, but bearing SLATER's initials and a date-stamp of June 20, 2015, and (2) a District of Columbia payment posting voucher, also initialed by SLATER and date-stamped June 20, 2015, falsely claiming Gevani, Inc. paid $6,397.52 in sales and use taxes for the May 2015 tax period.

22.     After SLATER created these fraudulent documents, JAFARI kept copies of them at Zeba Bar.

*October 2015*

23.     In or about early October 2015, JAFARI provided a September sales report for Gevani, Inc. to his accountant, and then obtained from his accountant a sales and use tax return for Gevani, Inc.'s September 2015 tax period, calculating the amount of sales and use taxes due based on the sales report as $6,389.07.

24.     On or about October 7, 2015, at approximately 9:30 a.m., MERRITT and JAFARI agreed by text message to meet at the bank at approximately 11:00 a.m.

25.     At approximately 10:16 a.m., MERRITT and SLATER had a conversation by phone.

26.     Shortly thereafter, at approximately 11:10 a.m. on the same day, MERRITT cashed a check in the amount of $3,190 from Gevani, Inc., signed by JAFARI, with the memo line, "Promoder."

27.     Within an hour, at approximately 11:45 a.m., SLATER browsed Gevani, Inc.'s account in ITS.

28.     SLATER provided JAFARI with copies of the following fraudulent documents, which JAFARI kept at Zeba Bar: (1) the sales and use tax return that JAFARI's accountant had prepared, indicating that Gevani, Inc. owed $6,389.07 in sales and use taxes for the September 2015 tax period, but bearing SLATER's initials and a date-stamp of October 20, 2015, and (2) a District of Columbia payment posting voucher, also initialed by SLATER and date-stamped October 20, 2015, falsely claiming Gevani, Inc. paid $6,389.07 in sales and use taxes for the September 2015 tax period.

*August 2016*

29.     In or about early August 2016, JAFARI provided a July sales report for Gevani, Inc. to his accountant, and then obtained from his accountant a sales and use tax return for Gevani, Inc.'s July 2016 tax period, calculating the amount of sales and use taxes due based on the sales report as $6,795.23.

30.     On or about August 8, 2016, MERRITT sent a text message to JAFARI, writing, "Yo Yo GM Bro. Hope All is Well. Let me know if you want to link up today. I'll be around all day." MERRITT then sent a text message to SLATER informing SLATER that he had texted "Dave." JAFARI responded, "GM bro. Everything is good. Still waiting For the sales Tax, I'll call u when I get it."

31.     The following morning, on or about August 9, 2016, JAFARI sent a text message to MERRITT, writing, "GM bro. I got the sales Tax do u want to do it today anothere day?" MERRITT responded, "I'm here at DCRA want to do it now bro."

32.     Shortly thereafter, around 12:00 p.m., MERRITT sent a text message to SLATER, stating that he was "Bout to meet Dave."

33.    At approximately 1:08 p.m. on the same day, MERRITT cashed a check in the amount of $3,390 from Gevani, Inc., signed by JAFARI, with the memo line, "Piomoder."

34.    SLATER provided copies of the following documents to JAFARI, who kept them at Zeba Bar: (1) a copy of the sales and use tax return that JAFARI's accountant had prepared, indicating that Gevani, Inc. owed $6,795.26 in sales and use taxes for the July 2016 tax period, but bearing SLATER's initials and a date-stamp of August 9, 2016, and (2) a District of Columbia payment posting voucher, also initialed by SLATER and date-stamped August 9, 2015, falsely claiming Gevani, Inc. paid $6,795.26 in sales and use taxes for the July 2016 tax period.

35.    Later that evening, SLATER initiated the following text message conversation with MERRITT in which he expressed dissatisfaction with JAFARI's payment:

SLATER:     Dave getting a lil lite

MERRITT:    How much did you get?  Fool.  I didn't even count mines yet . Took a quick nap

SLATER:     He owed like 68 so that's suppose to be 34 that's 17 mines was 12

MERRITT:    Ok let me count mines right now hang on fool . Bc he took me this time and came inside this time too . I usually meet him after at the building . Hang on real quick

MERRITT:    Mines was 1375 I'm going to let him know . Usually I count it but he separated it since we went together and I usually see the paper before hand that way I know?

SLATER:     Yea he way short

*September 2016*

36.    In or about early September 2016, JAFARI provided an August sales report for Gevani, Inc. to his accountant, and then obtained from his accountant a sales and use tax return for Gevani, Inc.'s August 2016 tax period, calculating the amount of sales and use taxes due based on the sales report as $6,417.89.

11

37.     On or about September 6, 2016, SLATER and MERRITT had a conversation through text messages regarding JAFARI:

SLATER:     Ok I'm sure Dave bout to be up

MERRITT:    Yea man that need to be this week SHIT. Also I'm bout to start taking a pic of them checks before I cash them bc I don't he could writing any number in there

SLATER:     Tru . . . I'm only there tomorrow & Friday

MERRITT:    Ok I'm on it

SLATER:     Ok

38.     The following morning, on or about September 7, 2016, MERRITT initiated the following text message conversation with SLATER:

MERRITT:    Be around we on for tomorrow with Dave. I need him this week bra. Had a lot to do for Moms and my son mother

SLATER:     I'm off tomorrow [. . . .]

SLATER:     Be back Friday

MERRITT:    Ok I guess we ain't got no choice but to wait til Friday

39.     In the morning on or about September 9, 2016, JAFARI sent MERRITT a text message, "GM bro. still waiting. They said very Busy. But I will let u know if I get it today."

40.     Immediately after he received the message from JAFARI, MERRITT started the following conversation through text messages with SLATER:

MERRITT:    GM bro. still waiting. They said very Busy. But I let u know if i get It today

MERRITT:    That's what Dave just texted

SLATER:     Ok that's fine

MERRITT:    I hope he hurry up Rough month so far

12

41.    At approximately 11:48 a.m. the same day, JAFARI sent MERRITT a text message, writing, "Got it." MERRITT responded, "Ok bro.  what time you want to meet up?"  JAFARI and MERRITT agreed to meet at 1:30 p.m.  Within a minute, MERRITT and SLATER exchanged the following messages:

MERRITT:    Yo Yo Dave just hit me.  You Ready ?

SLATER:     Yea

MERRITT:    He said 1:30 so let's 2:00 sharp

SLATER:     Ok

MERRITT:    Bet

SLATER:     Make it 2:30 had to run out

MERRITT:    I think he said he has to go back to the rest.  Quick bc it's Friday
            and he has a delivery

42.    At approximately 1:37 p.m. on the same day, MERRITT cashed a check in the amount of $3,200 from Gevani, Inc., signed by JAFARI, with the memo line, "Promoder."

43.    At approximately 2:16 p.m., SLATER sent MERRITT a text message, writing, "On my way . . . "

44.    SLATER provided JAFARI with copies of the following fraudulent documents, which JAFARI kept at Zeba Bar:  (1) the sales and use tax return that JAFARI's accountant had prepared, indicating that Gevani, Inc. owed $6,417.89 in sales and use taxes for the August 2016 tax period, but bearing SLATER's initials and a date-stamp of September 20, 2016, and (2) a District of Columbia payment posting voucher, also initialed by SLATER and date-stamped September 20, 2016, falsely claiming Gevani, Inc. paid $6,417.89 in sales and use taxes for the August 2016 tax period.

*May 2017*

45.     On or about May 16, 2017, JAFARI sent MERRITT a text message asking, "Hey bro. U have a mint I have to talk to u about tax." JAFARI then sent MERRITT a text containing a photograph of a Notice of Failure to File Tax Returns, addressed to Gevani, Inc, advising that OTR's records indicated that Gevani, Inc. had not filed sales and use returns for periods in 2011, 2012, 2013, 2014, 2015, 2016, and 2017, as well as corporate franchise taxes in 2016. Stapled to the Notice was the card and contact information of an OTR Revenue Officer in the Collection Division.

46.     The following day, on or about May 17, 2017, SLATER browsed Gevani, Inc.'s account in ITS, and SLATER and MERRITT communicated by telephone.

47.     In or about late May 2017, SLATER called the OTR Revenue Officer assigned to Gevani, Inc.'s account into his office. SLATER represented to the OTR Revenue Officer that SLATER was in direct contact with Gevani, Inc., told the OTR Revenue Officer that SLATER would look into Gevani, Inc.'s account, and agreed that the OTR Revenue Officer should cease further collection efforts until SLATER had completed his review.

48.     On or about June 4, 2017, MERRITT texted JAFARI, "Also V talked to the guy. Your good."

*September 2017*

49.     On or about September 5, 2017, MERRITT sent JAFARI a text message, writing, "Hey bro Hope All Is Well. V just texted me and said he will be off on Thursday thru all of next week. Bc of the new system they getting . It starts tomorrow. He said just let you know?" JAFARI replied, "Ok. Bro. I'll call my bookkeeper to speed up n get it faster."

50.     The following day, on or about September 6, 2017, JAFARI wrote to MERRITT, "GM bro.  I just text my bookkeeper n ask if I can get it today.  So I'm waiting on there behalf." MERRITT responded, No biggie I already told V."  JAFARI then asked, "Do u have my last mouth sales tax?"  MERRITT replied, "Yes V has it, It's been stamped by him."

51.     Later that same day, JAFARI texted MERRITT, "Got the sales tax," and JAFARI and MERRITT agreed to meet at the bank.

52.     At approximately 12:33 p.m. on the same day, MERRITT cashed a check in the amount of $4,370 from Gevani, Inc., signed by JAFARI, with the memo line, "Promoder."

53.     SLATER created the following fraudulent documents, which JAFARI kept at Zeba Bar:  (1) a copy of the sales and use tax return that JAFARI's accountant had prepared, indicating that Gevani, Inc. owed $7,932.29 in sales and use taxes for the July 2017 tax period, but bearing SLATER's initials and the date "9-6-17," (2) a copy of the sales and use tax return that JAFARI's accountant had prepared, indicating that Gevani, Inc. owed $8,746.06 in sales and use taxes for the August 2017 tax period, but bearing SLATER's initials and the date "9-6-17," and (3) a payment posting voucher, also initialed by SLATER and dated "9-6-17," falsely claiming Gevani, Inc. paid $7,932.29 in sales and use taxes for the July 2017 tax period, and $8,746.06 for the August 2017 tax period.

**SLATER'S Other Acts, as Opportunities Arose, on Behalf of JAFARI'S Business**

54.     On or about December 7, 2012, SLATER caused a note to be entered in ITS regarding JAFARI's business, Gevani, Inc., falsely stating that the business did not owe sales and use taxes prior to November 2011 when, in fact, Gevani, Inc, had been operating Zeba Bar in the District of Columbia since in or around July 2011, and should have paid sales and use taxes on a monthly basis starting then.

55.     On or about October 25, 2017, two days before OTR was scheduled to migrate sales and use taxpayer accounts from ITS to MITS, SLATER caused the creation of four fraudulent tax credits totaling $13,641.89 in the only tax periods for which Gevani, Inc. had ever paid sales and use taxes (four months in 2011 and early 2012), and then caused the four fraudulent tax credits to be forwarded to Gevani, Inc.'s December 2014 tax period, thus ensuring that they would be carried over to pay liabilities of Gevani, Inc. after the migration of Gevani, Inc.'s sales and use tax account to MITS.

### SLATER's Cash Deposits

56.     Between November 2013 and October 2017, SLATER made at least 114 cash deposits into his bank accounts at TD Bank and Industrial Bank, totaling $86,726.56. At least 60 of the deposits were made in amounts of $500 or more, totaling $75,202.

(In violation of Tile 18 United States Code, Section 371.)

## COUNT TWO
### (Bribery—18 U.S.C. §§ 201(b)(2) and 2)

57.     Paragraphs 1 through 11 and paragraphs 17 through 56 of this Indictment are re-alleged and incorporated as though set for herein.

58.     From in or about October 2012, through in or about December 2017, in the District of Columbia and elsewhere, the defendant,

### VINCENT SLATER,

being a public official, aided and abetted by defendant **ANTHONY MERRITT**, did, directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept anything of value personally and for another person, in return for SLATER being influenced in the performance of any official act and being induced to do and omit to do any act in violation of his lawful and official duty; that is, SLATER, aided and abetted by MERRITT, sought and received money from JAFARI in return for SLATER being influenced in the performance of official acts and being induced to violate lawful and official duties to OTR by helping JAFARI's business, Gevani, Inc., evade its tax obligations to the District of Columbia and creating fraudulent tax credits to pay Gevani, Inc.'s tax obligations to the District of Columbia as opportunities arose.

(In violation of Title 18, United States Code, Sections 201(b)(2)(A) & (C) and 2.)

## COUNT THREE
### (Bribery—18 U.S.C. §§ 201(b)(1) and 2)

59.     Paragraphs 1 through 11 and paragraphs 17 through 56 of this Indictment are re-alleged and incorporated as though set for herein.

60.     From in or about October 2012, through in or about December 2017, in the District of Columbia and elsewhere, the defendant,

**DAVOUD JAFARI,**

aided and abetted by defendant **ANTHONY MERRITT**, directly and indirectly, corruptly did give, offer, and promise anything of value to a public official with the intent to influence any official act and to induce such public official to do and omit to do any act in violation of his lawful and official duty; that is, JAFARI, aided and abetted by MERRITT, paid SLATER money to help JAFARI's business, Gevani, Inc., evade taxes and create fraudulent tax credits to pay Gevani, Inc.'s tax obligations to the District of Columbia, as opportunities arose.

(In violation of Title 18, United States Code, Sections 201(b)(1)(A) & (C) and 2.)

## COUNTS FOUR THROUGH SIX
### (Money, Property, and Honest Services Wire Fraud—18 U.S.C. §§ 1343 and 1346)

61.     Paragraphs 1 through 11 and paragraphs 17 through 56 of this Indictment are re-alleged and incorporated as though set forth herein.

62.     From in or about October 2012, through in or about December 2017, in the District of Columbia and elsewhere, the defendants,

**DAVOUD JAFARI
ANTHONY MERRITT, and
VINCENT SLATER,**

did devise and intend to devise a scheme and artifice to defraud the District of Columbia of money and property, and to defraud and deprive OTR and the District of Columbia and its citizens of their intangible right to SLATER's honest services through bribery and kickbacks.

63.     On or about the dates specified as to each count below, in the District of Columbia and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud, the defendants and others did knowingly and willfully transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds; that is, by cashing the following checks in the District of Columbia, the defendants caused an interstate wire to be transmitted to or from the District of Columbia:

| Count | Date | Description of Wire |
|---|---|---|
| 4 | 9/9/2016 | Check #4394 from Gevani, Inc. to Anthony Merritt |
| 5 | 5/10/2017 | Check #4984 from Gevani, Inc. to Anthony Merritt |
| 6 | 9/5/2017 | Check #5242 from Gevani Inc. to Anthony Merritt |

(In violation of Title 18, United States Code, Sections 1343 and 1346.)

## CRIMINAL FORFEITURE ALLEGATION

64.     Upon conviction of any of the offenses alleged in Count One through Count Nine of this Indictment, the defendants,

**DAVOUD JAFARI,**
**ANTHONY MERRITT, and**
**VINCENT SLATER,**

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to Title 18 United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). The United States will also seek a forfeiture money judgment against the defendants equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses.

65.     If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property that cannot be divided without difficulty,

the defendants shall forfeit to the United States any other property of the defendants, up to the value

of the property described above, pursuant to Title 21, United States Code, Section 853(p).

    (Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p)).

A TRUE BILL:

FOREPERSON

*Jessie K. Liu/MZ*

Attorney of the United States in
and for the District of Columbia